# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| v. | : 3:16-CR-352 |
| | : (JUDGE MARIANI) |
| **AARON BROUSSARD,** | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

Presently before the Court is a Motion to Dismiss for Improper Venue, filed by Defendant, Aaron Broussard, pursuant to Federal Rule of Criminal Procedure Rules 12 and 18. (Doc. 100). For the following reasons, the Court will deny the motion.

### I. INTRODUCTION AND PROCEDURAL HISTORY

Beginning in spring of 2016, law enforcement officials commenced an investigation into several fentanyl-related overdoses throughout the United States. (Doc. 101, at 4). At least ten (10) of these overdoses resulted in death in April 2016 and early May 2016. (*Id.*) These deaths occurred in the following cities: Atlanta, Georgia; Peoria, Illinois; Scranton, Pennsylvania; Falcon Heights, Minnesota; Hazel Green, Wisconsin; Deltona, Florida; Binghamton, New York; Aliso Viejo, California; Dallas, Texas; and Erie, Pennsylvania. (*Id.* at 5). Several other non-fatal overdoses resulting in grievous bodily harm occurred in the following cities: Grand Rapids, Michigan; Alisa Viejo, California; Waukee, Iowa; and Scranton, Pennsylvania. (*Id.*)

Investigators discovered that, right before their overdoses and/or deaths, the victims had purchased various substances from the online business PLANTFOODUSA.NET. (Doc. 103, at 4). Although these substances purported to be analogs of controlled substances, it is alleged that the victims received fentanyl instead of the less dangerous drugs they ordered. (Doc. 101, at 5). Further investigation revealed that Defendant owned and operated the internet-based business PLANTFOODUSA.NET from his residence in Hopkins, Minnesota. (*Id.* at 5-6). Additionally, law enforcement officials determined that Defendant utilized a post office in Hopkins, Minnesota to mail parcels containing the substances to his customers. (*Id.* at 6).

On or about May 2, 2016, Defendant shipped one such parcel via the United States Postal Service to the residence of C.S., located at 1106 Pine Street in Scranton, Pennsylvania. (Doc. 103, at 2). C.S. had purchased what he believed to be 4-FA, a controlled substance/analog of amphetamine, from PLANTFOODUSA.NET. (*Id.* at 2). C.S. and his girlfriend, A.L., ingested the substance he received from PLANTFOODUSA.NET on or about May 6, 2016. (*Id.*) C.S. then experienced respiratory failure and was hospitalized in Scranton, and A.L. subsequently died from what was ruled to be a fentanyl overdose. (*Id.*)

On December 6, 2016, a federal grand jury sitting in the Middle District of Pennsylvania returned a one (1) count indictment against Defendant, charging him with drug distribution that resulted in the death of A.L. in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(C). (Doc. 1, Indictment). A superseding indictment, filed against Defendant on November 20, 2018, charged Defendant with the subsequent death of C.S. (Doc. 57, Superseding Indictment). Although Defendant's counsel engaged in plea negotiations that would include the charges brought in the Middle District of Pennsylvania, as well as open investigations in approximately thirteen (13) other jurisdictions, the parties were unable to reach an agreement. (Doc. 101, at 3). Thereafter, on April 10, 2019, Defendant was indicted in the United States District Court for the District of Minnesota on twenty-one (21) counts with respect to eleven (11) other fentanyl-related cases from around the country. (*Id.*) Besides this case in the District of Minnesota, the above-captioned criminal matter, which indicted Defendant on a single count in the Middle District of Pennsylvania, is the only other criminal case pending against Defendant in the country.

On May 14, 2020, Defendant filed a motion entitled Motion to Dismiss Pursuant to Federal Criminal Procedure Rule 18: Place of Prosecution and Trial (Doc. 100), which is now before the Court. The issues have been fully briefed (Doc. 101; Doc. 103) and the Defendants' Motion is ripe for disposition.

## II. STANDARD OF REVIEW

Pursuant to Rule 12(b)(3) of the Rules of Criminal Procedure, a motion to dismiss a criminal indictment may be brought at any time before trial. Such motions may be brought for alleged defects in instituting the prosecution, including improper venue. FED. R. CRIM. P.

12(b)(3)(A)(i). Motions that the court lacks jurisdiction over a criminal proceeding, however, may be brought "at any time while the case is pending." *See* FED. R. CRIM. P. 12(b)(2).

## IV. ANALYSIS

In his motion, Defendant argues that venue for the above-captioned criminal matter is proper in the District of Minnesota. Specifically, Defendant asserts that the alleged crime occurred while he was in Hopkins, Minnesota, and that the instant case should be held where all of his other criminal cases are being tried. The Government opposes the motion and argues that venue is proper in the Middle District of Pennsylvania, as the indictment charged Defendant with drug distribution resulting in death and serious bodily injury that occurred here. The Government also relies on 18 U.S.C. § 3237(a), the "continuing offense" venue statute, in support of its position that venue is properly laid in the Middle District of Pennsylvania. After careful review, the Court agrees with the Government.

The United States Constitution safeguards a defendant's right to proper venue in criminal trials. *See United States v. Baxter*, 884 F.2d 734, 736 (3d Cir. 1989). Indeed, both Article III and the Sixth Amendment require that a defendant's criminal trial take place in the state where the alleged crime occurred. *See* U.S. CONST. art. III, § 2, cl. 3 ("[T]he trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed."); U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."). Rule 18 of the Federal Rules of Criminal Procedure reflects these

constitutional mandates and provides that "the government must prosecute an offense in a district where the offense was committed." *United States v. Cabrales*, 524 U.S. 1, 6 (1998); FED. R. CRIM. P. 18. Rule 18 additionally requires that the court "set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." FED. R. CRIM. P. 18.

In cases involving continuing offenses against the United States, 18 U.S.C. § 3237(a) provides that such matters may be prosecuted "in any district in which such offense was begun, continued or completed." Under this provision, continuing offenses include crimes "involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object . . . into the United States," which may be "prosecuted in any district from, through, or into which such commerce, mail matter, or imported object . . . moves." *Id*. Therefore, "[w]hen the crime consists of distinct acts occurring in different places, venue is proper where any part of the crime occurs." *United States v. Pendleton*, 659 F.3d 299, 303 (3d Cir. 2011).

Nonetheless, "the mere fact of proper venue in the district where the Government brings the prosecution does not require that the trial be held therein." *United States v. Haley*, 504 F. Supp. 1124, 1125 (E.D. Pa. 1981). Specifically, "defendants who wish to be prosecuted in a venue other than the one the Government has chosen can file a motion to transfer venue under Rule 21 of the Federal Rules of Criminal Procedure, which provides for transfers for both prejudice and convenience." *United States v. Renteria*, 903 F.3d 326,

5

331 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 2714, 204 L. Ed. 2d 1110 (2019). The decision to grant or deny a motion to transfer venue under Rule 21 falls within the sound discretion of the district court. *Martin v. Warden, Huntingdon State Corr. Inst.*, 653 F.2d 799, 804 (3d Cir. 1981).

At the outset, while the instant motion invokes Rule 18, the relief that Defendant seeks pertains to Rule 21. Specifically, the Defendant's motion and supporting brief request that the Court consider transfer to the District of Minnesota. (Doc. 100 at 5; Doc. 101 at 11). Accordingly, the Court will evaluate the Defendant's motion under Rule 21(b) regarding transfer for convenience. *See* FED. R. CRIM. P. 21(b); *United States v. Jacobs*, No. CRIM. 05-64, 2006 WL 456178, at *2 n.1 (W.D. Pa. Feb. 22, 2006), *aff'd*, 311 F. App'x 535 (3d Cir. 2008) (noting that a defendant's request for change of venue outside the district is governed by FED. R. CRIM. P. 21 instead of FED. R. CRIM. P. 18).

Although the Court considers the Defendant's motion under Rule 21, it nonetheless denies Defendant's motion to the extent that it relies on Rule 18. Specifically, although Defendant's alleged criminal conduct began in Hopkins, Minnesota, the Court agrees with the Government that venue is proper in the Middle District of Pennsylvania insofar as the crime was completed in this district based on a continuing offense theory. *See* 18 U.S.C. § 3237(a); *see also United States v. Tiangco*, 225 F. Supp. 3d 274, 283 n.15, 288 (D.N.J. 2016) (noting that the definition of "distribution" under 21 U.S.C. § 841(a)(1) is "broad enough to encompass . . . the entire process of sending a package to another state by

commercial courier," and holding that, when defendant utilized the United Parcel Service to deliver narcotics to New Jersey from Nevada, venue for the defendant's charge under § 841(a) was proper in New Jersey pursuant to 18 U.S.C. 3237(a) because she "purposefully engaged in a unitary *interstate* transfer of drugs"). Therefore, the Court is not convinced by the Defendant's argument that venue is improper in the Middle District of Pennsylvania.

At issue is thus whether the Court should exercise its discretion and transfer this case to the District of Minnesota. In deciding a motion to transfer under Rule 21(b), the court must consider the following ten-factors as enumerated by the Supreme Court: (1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events at issue; (4) the location of documents and records likely to be involved; (5) the disruption of defendant's business unless the case is transferred; (6) the expense to the parties; (7) the location of counsel; (8) the relative accessibility of the place of trial; (9) the docket condition of each district involved; and (10) any other special elements which might affect the transfer. *In re U.S.*, 273 F.3d 380, 387–88 (3d Cir. 2001) (citing *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964)). A court is not required to accompany a transfer order with "a lengthy statement . . . as long as there is a sufficient explanation of the factors considered, the weight accorded them, and the balancing performed." *Id.* at 387. Additionally, although the defendant bears the burden of showing the propriety of transfer under Rule 21(b), "the defendant is not required to show 'truly compelling circumstances for . . . change . . . [of venue, but rather that] all relevant things considered, the case would be

7

better off transferred to another district." *Id.* at 388 (quoting *In re Balsimo*, 68 F.3d 185, 186 (7th Cir. 1995)).

A defendant should also support a Rule 21 motion to transfer with "affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer." *In re United States*, 273 F.3d 380, 386 (3d Cir. 2001) (quoting *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 (3d Cir. 1973)). Defendant has not provided any such supporting documents here, which is a deficiency that disfavors granting the Defendant's request. Nonetheless, the Court will consider whether transfer is appropriate "based upon the available information contained in the record." *See United States v. Burnett*, No. CR 16-185, 2019 WL 109333, at *9 (W.D. Pa. Jan. 4, 2019).

The Court begins its analysis by considering the location of the Defendant. Defendant is currently detained pending trial in Lackawanna County Prison. However, as averred in his supporting brief, Defendant resided in Hopkins, Minnesota when he was apprehended and brought to Scranton on this case. (Doc. 7, at 12; Doc. 101, at 11). "Although a defendant does not have [a] right to be tried in his or her home district, within the *Platt* analysis defendant's residence deserves 'real weight.'" *United States v. Menendez*, 109 F. Supp. 3d 720, 726 (D.N.J. 2015); *see also United States v. Kennedy*, No. CR. 86-159, 1986 WL 6227, at *1 (E.D. Pa. May 28, 1986) ("[I]t is preferable to try a defendant in the district where he resides, although the defendant has no right to be tried in

8

his home district.") (internal citations omitted). Accordingly, this factor weighs slightly in favor of transfer to the District of Minnesota.

The court next considers the location of possible witnesses, the location of the events at issue, and the location of documents and records that are likely to be involved in Defendant's criminal prosecution. Notably, Minnesota DEA agents investigating PLANTFOODUSA.NET obtained a Federal Search Warrant for Defendant's residence in Hopkins, Minnesota (the "Search Warrant"). (Doc. 103, at 4-5). On December 5, 2016, with the assistance of the DEA Minneapolis Clandestine Laboratory Team and DEA Laboratory personnel, Minnesota law enforcement officials executed the Search Warrant and seized twenty-six (26) drug related exhibits from Defendant's residence. (*Id.* at 5). Law enforcement also recovered evidence that confirmed Defendant's ownership of the online business PLANTFOODUSA.NET, as well as computers, cellular telephones, documents, and drug packaging equipment. (*Id.*) Agents thus determined that Defendant utilized his Hopkins, Minnesota residence as the base for his alleged drug activities. (Doc. 101, at 7).

However, DEA Agents also investigated Defendant and PLANTFOODUSA.NET in connection with the fentanyl overdoses and subsequent deaths of C.S. and A.L. that occurred in Scranton, Pennsylvania. (Doc. 101, at 1-3; Doc. 103, at 3). Indeed, the United States Attorney's Office for the Middle District of Pennsylvania filed the initial indictment against Defendant the day after Minnesota law enforcement officials executed the Search Warrant. (Doc. 101, at 1-2). As such, potential witnesses and evidence may also be

located in the Middle District of Pennsylvania. (Doc. 103, at 1-3). Therefore, despite the presence of investigating officers and evidence in Minnesota, the Court finds that the second, third, and fourth *Platt* factors weigh slightly against transfer.

Next, the Court evaluates the extent of any disruption to Defendant's business unless transfer is granted, the expense to the parties, the location of counsel, and the relative accessibility of the place of trial. As mentioned *supra*, Defendant is presently incarcerated in Lackawanna County Prison. Therefore, the Court is not persuaded that standing trial in the Middle District of Pennsylvania will be any more disruptive to a business of Defendant's than standing trial in the District of Minnesota. *See United States v. Burnett*, No. CR 16-185, 2019 WL 109333, at *9 (W.D. Pa. Jan. 4, 2019) (finding that transfer was not required because Defendant did not argue that there would be any disruption to his business while he was incarcerated); *see also United States v. Hays*, No. CRIM. A. 96-51-02, 1997 WL 34666, at *4 (E.D. Pa. Jan. 29, 1997) (noting that, "[i]n a criminal trial, where a defendant must be present every day in court, any location is bound to cause some significant interference with business").

Additionally, upon balancing "the expense of an out-of-town trial . . . against the adverse impact on the government if transfer were granted," the Court finds that the expense to both parties is a neutral factor. *See Hays*, 1997 WL 34666, at *4 (E.D. Pa. Jan. 29, 1997). Further, given that Defendant's attorney of record, Bernard J. Brown, maintains his office in Carbondale, Pennsylvania, this factor is also a neutral one. *See United States*

10

*v. Piper*, No. CRIM. 09-218, 2011 WL 3678865, at *7 (M.D. Pa. Aug. 22, 2011) (noting that this factor "does not weigh one way or the other in favor of transfer" when both the defendant's counsel and the government's attorney would have to travel to another district for trial). However, there is nothing to suggest that this case should be transferred due to the relative accessibility of the place of trial in the Middle District of Pennsylvania. Accordingly, the fifth, sixth, seventh, and eighth *Platt* factors are either neutral or do not favor transfer to the District of Minnesota.

Finally, the Court considers the docket condition of the Middle District of Pennsylvania and the District of Minnesota, as well as any other special considerations that might affect transfer. With respect to the relative docket conditions of the districts involved, the Court cannot ascertain any factors that would compel transfer. However, in April of 2019, the United States District Court for the District of Minnesota indicted Defendant and charged him with the following twenty-one (21) counts: one (1) count of conspiracy, in violation of 21 U.S.C. § 846; one (1) count of importation of fentanyl; one (1) count of possession with intent to distribute fentanyl; twelve (12) counts of drug distribution resulting in death and seriously bodily injury; and six (6) counts of possession with the intent to distribute controlled substances and controlled substance analogues. *See USA v. Broussard*, No. 19-CR-00101-SRN-KMM (D. Minn., Indictment, ECF No. 1).[1] According to

---

[1] The Court takes judicial notice of the criminal docket in *USA v. Broussard*, No. 19-CR-00101-SRN-KMM (D. Minn. *filed* Apr. 10, 2019), which is available through the U.S. Court's national PACER Index

11

Defendant, although these charges related to investigations from across the country, they were all brought in the District of Minnesota because it encompassed his alleged place of operation and residence. (Doc. 101, at 3). The instant case, which charges Defendant with a single criminal count in the Middle District of Pennsylvania, raises the only fentanyl-related charge that is not being tried against Defendant in the District of Minnesota.

Nonetheless, the Minnesota Indictment does not bring a specific charge for the deaths of C.S. and A.L., but instead references their overdoses in connection with the conspiracy charge against Defendant. *See USA v. Broussard*, No. 19-CR-00101-SRN-KMM (D. Minn., Indictment, ECF No. 1). The occurrence of the deaths of C.S. and A.L. are specific elements of the Superseding Indictment, returned in the Middle District of Pennsylvania on November 20, 2018, that subject Defendant to the mandatory minimum term of imprisonment of twenty (20) years as prescribed in 21 U.S.C. § 841(b)(1)(C) and the increased maximum penalty of life imprisonment. Thus, the Government's assertion that "the defendant's distribution was not complete until it reached the possession and custody of the intended recipient at the intended location, i.e., [C.S.], 1106 Pine Street, Scranton, Pennsylvania" (Doc. 103, at 14-15), when taken together with the foregoing, present special considerations that disfavor transfer.

---

at www.PACER.gov. *See Orabi v. Attorney Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) (noting that a district court may take judicial notice "of the contents of another Court's docket").

Having considered and balanced the relevant *Platt* factors, the Court does not find that this case "would be better off transferred to another district." *See In re U.S.*, 273 F.3d 380, 388 (3d Cir. 2001). Therefore, the Court will deny Defendant's motion to transfer venue to the District of Minnesota pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure.

## V. CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court will deny the Defendants' Motion (Doc. 100) to the extent that it either moves to dismiss the indictment based on improper venue or seeks to transfer the above-captioned criminal matter to the District Court for the District of Minnesota. A separate Order follows.

Robert D. Mariani
United States District Court Judge